[No. A043977. First Dist., Div. Two. Mar. 20, 1990.]

MARGARET C. BARRY, Plaintiff and Appellant, v.
PETER TUREK, Defendant and Respondent.

## COUNSEL

Aubrey W. A. Weldon for Plaintiff and Appellant.

Janet L. Grove, William B. McCoy and O'Connor, Cohn, Dillon & Barr for Defendant and Respondent.

## Opinion

**KLINE, P. J.**—Appellant Margaret Barry appeals the grant of summary judgment against her. She asserts the trial court erroneously found that respondent psychiatrist, Dr. Peter Turek, was immune from liability under Civil Code section 43.92, subdivision (a).

### I. Statement of the Facts[1]

Respondent provided psychological care to Bismillah Jan at St. Mary's Hospital (St. Mary's) in San Francisco starting on May 14, 1986. Jan, a male Afghani, suffered severe injuries to the head and neck in the Afghanistan war, and was brought to St. Mary's for reconstructive surgery by the California Committee for a Free Afghanistan. At that time, Jan was 17 or 18 years old, 5 feet 4 inches tall, and weighed approximately 105 pounds. He wore a mask which covered most of his face. He spoke no English and communicated through interpreters.

Jan roamed freely on the seventh floor of St. Mary's. On a number of occasions, he followed nurses in "inappropriately close ways" and "grab[ed] nurses and [tried] to kiss and fondle them." These incidents appear to have occurred between May 15 and May 25 of 1986.[2] Respondent and his assistants instructed Jan not to touch the nursing staff and, on at least one occasion, Jan nodded affirmatively after such instructions were given.

Jan never made verbal threats of violence within the hearing of respondent or his assistants, and appellant does not point to any evidence that respondent knew Jan had any violent tendencies.

Appellant worked on the seventh floor of St. Mary's as office manager in the social services department. Jan entered her office on a number of occasions, leaned over her and touched her with his shoulder. On each occasion, Jennifer Root, a clerical worker in the same office, had been present.

On the afternoon of June 6, 1986, Jan again came into appellant's office when she and Root were there. Appellant was on the telephone and Jan stood at her shoulder. Root left the office to run an errand. When appellant hung up the phone and stood up, Jan pushed his body against her and pinned her against the wall. He attempted to simultaneously fondle her

---

[1] The facts as set forth herein are construed as favorably as possible for appellant for the purposes of reviewing the grant of summary judgment. (*Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1244 [209 Cal.Rptr. 189]; *Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583, 611-612 [192 Cal.Rptr. 870].)

[2] It is impossible to verify the exact dates by reference to the record.

breast and force her legs open while he masturbated. Appellant was wearing a pants outfit at the time; none of her clothes were removed during the assault. Root returned to the office while the assault was still occurring and Jan ran out of the room.

The assault aggravated appellant's bursitis of the shoulder and caused her to suffer psychological trauma.

## II. STATEMENT OF THE CASE

On June 1, 1987, appellant filed suit against respondent, the California Committee for a Free Afghanistan, and others, alleging negligence and negligent infliction of emotional distress.[3] On August 17, 1988, respondent moved for summary judgment on the grounds that Jan did not communicate to him a serious threat of violence; that appellant was not a reasonably identifiable victim, and that respondent was exempt from liability because he was rendering medical care as a "Good Samaritan." The trial court rejected respondent's claim of immunity under the Good Samaritan statute. However, the court specifically held that appellant had not met her burden of showing the case was within the exception to the immunity provided under Civil Code section 43.92.

This timely appeal followed.

## III. DISCUSSION

Civil Code section 43.92, subdivision (a) provides that: "There shall be no monetary liability on the part of, and no cause of action shall arise against, any person who is a psychotherapist as defined in Section 1010 of the Evidence Code in failing to warn of and protect from a patient's threatened violent behavior or failing to predict and warn of and protect from a patient's violent behavior except where the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims."

■ Section 43.92, subdivision (a) was enacted to limit the liability of psychotherapists under *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].[4]

---

[3] Neither the hospital, nor the committee or its members were ever served.

[4] In *Tarasoff* the parents of a murdered woman sued the murderer's therapist for failing to warn them of the danger his patient presented. The court held that "When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to

The legislative history to Civil Code section 43.92, subdivision (a) states: "[C]ase law has held that a psychiatrist may be liable for negligently failing to protect a person when a patient presents a serious danger to that person. [¶] This bill would provide for immunity from liability for a psychotherapist who fails to warn of and protect from, or predict and warn of and protect from a patient's threatened violent behavior, except where the patient has communicated to the psychotherapist a serious threat of violence against a reasonably identifiable victim." (Legis. Counsel's Dig., Assem. Bill. No. 1133, 4 Stats. 1985 (Reg. Sess.) Summary Dig., pp. 227-228.)

 Psychotherapists thus have immunity from *Tarasoff* claims except where the plaintiff proves that the patient has communicated to his or her psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims. We are satisfied that appellant has established she was part of a group of "reasonably identifiable victims." Based on Jan's past pattern of conduct, any female working full-time on the seventh floor of St. Mary's was reasonably identifiable as a victim of Jan's inappropriate sexual behavior. Appellant was not an occasional visitor to the hospital: she was regularly employed as the office manager in the social service department at St. Mary's, and her office was on the seventh floor. As such, she was within the group of women to whom Jan had daily access and was clearly part of an identifiable group of potential victims. While Jan primarily had confined his sexual advances to nurses before the June 6 incident, his persistence in pursuing the available women made it reasonable for one familiar with his actions to assume he might assault any accessible woman.[5]

---

protect the intended victim against such danger." (17 Cal.3d at p. 431.) The court determined that a psychotherapist's duty may include warning the intended victim. (*Ibid.*)

[5] Respondent relies upon *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701] to support his claim that appellant was not a reasonably identifiable victim of Jan's conduct. In *Thompson*, a juvenile offender being held in custody threatened to kill a young child and, within 24 hours of his release, murdered his 5-year-old neighbor. The Supreme Court affirmed the dismissal of the parents' failure to warn claim and characterized the communication as "a generalized threat to a segment of the population" and a threat to "a member of a large amorphous public group of potential targets." (*Id.*, at pp. 750, 758.) The court reasoned that "[in situations where the identities of the threatened targets are known] it is fair to conclude that warnings given discreetly and to a limited number of persons would have a greater effect because they would alert those particular targeted individuals of the possibility of a specific threat pointed at them. In contrast, the warnings sought by plaintiffs would of necessity have to be made to a broad segment of the population and would be only general in nature. In addition to the likelihood that such generalized warnings when frequently repeated would do little as a practical matter to stimulate increased safety measures . . . such extensive warnings would be difficult to give." (*Id.*, at p. 755.)

In comparison to *Thompson,* where an entire neighborhood would have had to be alerted to the potential danger, here only the female employees on a single floor of the hospital would have been implicated. Moreover, such a warning could have been issued discreetly and effectively at minimal cost. Unlike the panic which might ensue if a "large amorphous public group" was warned of a possible murder, it is unlikely that the hospital workers would have

The much more difficult question is whether appellant has sufficiently shown that respondent ought to have been aware that Jan presented a serious threat of physical violence. Before Jan's assault on appellant his inappropriate conduct with women was limited to incidents in which he attempted to grab and kiss the nurses: his medical chart states that he followed the nurses in "inappropriately close ways." Although the nurses quite properly found this behavior annoying, no physical violence was involved in these incidents and the nurses' notes suggest they were not frightened by Jan's conduct. The nursing staff attempted to correct the problem by setting limits Jan could comprehend and abide by. On May 25 Jan tried to kiss and fondle the nurses and was ordered back to his room. Later that day, however, the nurse noted that Jan displayed no inappropriate sexual behavior during her time with him. The record shows that the assault on appellant was by far the most serious incident involving Jan.

■ On appeal from a summary judgment we must determine whether a triable issue of material fact exists. Where, as here, summary judgment has been granted in favor of the defendant, we must consider whether there is any possibility that the plaintiff may be able to establish her case. In making this decision we must construe strictly the defendant's declarations and construe liberally those of the plaintiff. (*Slaughter* v. *Legal Process & Courier Service, supra*, 162 Cal.App.3d at p. 1244.) ■ With these principles in mind we nonetheless have concluded that there is insufficient evidence to suggest that, based on Jan's prior conduct, respondent should have been aware Jan was likely to commit such a serious sexual assault.

In sum, because Jan's conduct in the hospital prior to the assaults on appellant did not constitute a "serious threat of physical violence" for the purposes of establishing an exception to the immunity provided by Civil Code section 43.92, subdivision (a), the court correctly granted respondent's motion for summary judgment.

Accordingly, the judgment is affirmed.

Smith, J., concurred.

---

been unduly alarmed if they had been warned of Jan's propensities. For these reasons, the rationale of *Thompson* is not applicable to this case.

In that portion of his separate opinion dissenting from this conclusion, Justice Benson argues that the potential victims Jan might conceivably encounter in the hospital are not limited to readily identifiable female employees assigned to the seventh floor. Justice Benson may be right about this but his point is irrelevant. For purposes of appellant's claim it is sufficient that *she* was part of an identifiable group of victims (female employees working in Jan's immediate environs), even if that group represents only a portion of a larger number of conceivable victims who could not so easily be warned.

**BENSON, J.,** Concurring and Dissenting.—I concur in the judgment because I agree there was not sufficient evidence to establish a patient/psychotherapist communication of serious threat of physical violence.

However, I dissent from the majority's conclusion that appellant was "part of a group of 'reasonably identifiable victims.'" (Maj. opn., *ante,* p. 1245.)

In my judgment *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701], provides compelling authority precluding characterization of appellant as a "reasonably identifiable victim." (Civ. Code, § 43.92, subd. (a).) The majority discusses *Thompson* in footnote 5 of its opinion and in the interest of brevity I refer the reader to that discussion. It is sufficient to note that the *Thompson* court in affirming dismissal of the failure to warn claim described the communication as "a generalized threat to a segment of the population" and a threat to "a member of a large amorphous public group of potential targets." Appellant here fits within the category described in *Thompson.*

The majority recognizes that the patient's sexual attentions were directed to *women* for they acknowledge that ". . . his [Jan's] persistence in pursuing the available women made it reasonable for one familiar with his actions to assume *he might assault any accessible woman.*" (Maj. opn., p. 1245, italics added.)

The majority seeks to distinguish the *Thompson* rationale by employing the unreasonable predicate that "here only the female employees on a single floor of the hospital would have been implicated." (Maj. opn., p. 1245, fn. 5.) This is an unduly restrictive view of the scope of the threatened population for several reasons. First, it assumes a fact on which the record is silent, i.e., that the patient Jan was confined to the hospital's seventh floor. Second, it concludes that "any accessible woman" is limited to female "employees," thus ignoring the presence of female patients, visitors and various categories of volunteers who frequent hospital hallways and rooms. Finally, it seemingly overlooks the reality of patient service and care in a large metropolitan hospital where food handlers, cleaning and maintenance personnel, doctors, aides, therapists, suppliers, engineers, clerical and administrative workers, all services performed by women as well as men, are brought into proximity with patients throughout the hospital. Moreover, hospitals function 24 hours a day, everyday, and patients and their visitors are constantly changing.

Just as in *Thompson,* where it was unreasonable to require the county to warn all parents of young children in the parolee's neighborhood (27 Cal.3d, at p. 756), so here it would be unreasonable to require the psycho-

therapist to warn all women who might become exposed to the threatening patient. I am confident that the Legislature, in limiting a psychotherapist's duty to warn to "reasonably identifiable victim or victims," did not intend to extend the duty to situations where it is impracticable or impossible to comply.

Justice Tobriner, author of the majority opinion in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], the decision which prompted the legislative response set forth in Civil Code section 43.92, subdivision (a), was cognizant of the dangers attendant to imposing on the psychotherapist a duty to warn where identification of the victim was uncertain. In footnote 11 the Justice observes: "Defendant therapists and amicus also argue that warnings must be given only in those cases in which the therapist knows the identity of the victim. *We recognize that in some cases it would be unreasonable to require the therapist to interrogate his patient to discover the victim's identity or to conduct an independent investigation. But there may also be cases in which a moment's reflection will reveal the victim's identity.* The matter thus is one which depends upon the circumstances of each case and should not be governed by any hard and fast rule." (*Id.,* at p. 439, italics added.) *Tarasoff* involved a victim who although unnamed was readily identifiable. (*Id.,* at p. 432.)

Concluding that appellant is a reasonably identifiable victim by relying on a myopic analysis which ignores the realities of hospital routine, the majority seeks to establish precedent[1] despite the caveat of *Tarasoff,* the guidance of *Thompson*, and clear legislative direction that the victim be reasonable identifiable. Appellant is merely a "member of a large amorphous public group of potential targets." The effort by the majority to extend the duty to warn under circumstances where warning is certainly impractical if not impossible places an intolerable burden on psychotherapists and guts the legislative intent of Civil Code section 43.92, subdivision (a).

---

[1] I recognize that the majority's discussion regarding appellant as a reasonably identifiable victim is unnecessary to their judgment and therefore dicta. However, as they seek to promulgate their highly disputed point of view despite the lack of need to do so, I can only assume they intend their views to influence the future development of the law in this area. I am thus forced to write in an effort to highlight the mischief I perceive exists in their opinion.