Filed 6/27/16  P. v. Richards CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN HENRY RICHARDS,<br><br>    Defendant and Appellant. | A145948<br><br>(Marin County<br> Super. Ct. No. SC193198A) |

Defendant John Henry Richards appeals from a July 2, 2015, judgment, entered following a contested hearing at which he was found to have violated the terms of his post release community supervision (PRCS; see Pen. Code, § 3451, subd. (a)[1]).  The court reinstated defendant's PRCS subject to the condition that he serve 180 days in county jail, with credit for time served of 96 days.  Defendant's appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, and asks us to independently review the record and suggests two arguable issues.[2]  We affirm.

---

[1]    All further unspecified statutory references are to the Penal Code.

[2]    As required under *People v. Kelly* (2006) 40 Cal.4th 106, 124, we affirmatively note that appellate counsel has informed us that he has written to defendant at his last known address advising him of his right to file a supplemental brief and defendant has not filed such a brief.

## FACTS

### A. Sonoma County Proceedings

On May 3, 2010, the Sonoma County District Attorney filed an amended information charging defendant with the misdemeanor offense of intentional interference with a lawful business establishment (§ 602.1, subd. (a)) (count one); the felony offense of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)) (count two); the felony offense of attempting to deter a police officer from performance of his duties by threats (§ 69) (count three); the misdemeanor offense of resisting arrest (§ 148, subd. (a)(1)) (count four); and the misdemeanor offense of elder abuse (§ 368, subd. (c)) (count five). The amended information further alleged, in pertinent part, that defendant had served two prior prison terms (§ 667.5).

On September 3, 2010, at a change of plea proceeding, defendant pleaded no contest to the felony offense of attempting to deter a police officer from the performance of his duties by threats (count three) and the misdemeanor offense of elder abuse (count five), and he further admitted he had served two prior prison terms. In his written plea agreement, defendant understood that the maximum punishment he might receive was a determinate term of five years in state prison followed by parole for three to four years. The prosecution agreed to dismiss counts one, two, and four.

On November 5, 2010, defendant was sentenced to an aggregated term of five years in state prison. The execution of sentence was suspended, and defendant was placed on probation for four years under the supervision of the Sonoma County probation department. On April 14, 2011, after defendant changed his residence, jurisdiction of the case was transferred to the Marin County probation department.

### B. Marin County Proceedings

### 1. Background

In January 2014, following a hearing at which defendant admitted to violating the terms of his probation, the court revoked defendant's probationary term. On February 20, 2014, defendant's probation was terminated and the previously suspended sentence of five years in state prison was imposed pursuant to section 1170. Defendant was granted

credit for time served of 772 days. On May 14, 2015, defendant was released from prison on PRCS to the Marin County probation department, with supervision scheduled to expire on May 14, 2018.

Two days after defendant's release from prison, on May 16, 2015, he received a citation for violating section 647, subdivision (f),[3] in San Francisco County and he was taken to a hospital emergency room for evaluation. Two days later, the Marin County probation department filed a petition to revoke defendant's PRCS based on his alleged violation of the following conditions of his PRCS: commission of criminal conduct ("[y]ou shall not engage in conduct prohibited by law"); and failure to "totally abstain from use of alcohol during the supervision period." The petition also included as an attachment a report prepared by University of California, San Francisco Police Officer Stephen Lee. Officer Lee went to the hospital in response to a *Tarasoff* report by a hospital doctor that defendant had made threats against his former probation department officer.[4] According to the doctor, defendant stated he had access to a gun at a friend's house and he wanted to shoot his former probation department officer in the face. Although defendant may have been intoxicated at the time he made the statements, the

---

[3]     Section 647, subdivision (f), reads, in pertinent part: " . . . [E]very person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: [¶] . . . [¶] (f) Who is found in any public place under the influence of intoxicating liquor . . . in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."

[4]     In *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 (*Tarasoff*), the court held that "[w]hen a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger," which might include warning the intended victim. (*Id.* at p. 431.) In response to *Tarasoff*, the Legislature enacted Civil Code section 43.92, which provides " 'for immunity from liability for a psychotherapist who fails to warn of and protect from, or predict and warn of and protect from a patient's threatened violent behavior, except where the patient has communicated to the psychotherapist a serious threat of violence against a reasonably identifiable victim.' " (*Barry v. Turek* (1990) 218 Cal.App.3d 1241, 1245.)

3

doctor believed defendant's threat was still credible.  Officer Lee also spoke with defendant at the hospital.  Defendant repeated his statements regarding access to "a silenced pistol" at his friend's house and his plan to use the gun to shoot his former probation department officer in the head.  Defendant said he was upset because his former probation department officer had written untrue statements in a report that led to defendant's prison sentence.  Officer Lee notified defendant's former probation department officer about the situation.  The former probation department officer confirmed supervising defendant for two years prior to his prison sentence, defendant knew the officer's work location, the officer believed defendant's threat was credible and put the officer in fear.

2.    **Current Proceeding Under Review**

On July 2, 2015, the court held a contested hearing on the petition to revoke defendant's PRCS.  The court heard testimony from Marin County Probation Department Supervisor Eric Olsen and Officer Lee.  Olsen testified that defendant's release conditions included that defendant was not to engage in conduct prohibited by law and he was to immediately inform his supervising county agency if he received a citation.  The court admitted into evidence, a written form, signed by defendant on January 20, 2015, which set forth the conditions of defendant's release on PRCS.  Officer Lee testified concerning the *Tarasoff* report the officer received from the hospital doctor regarding defendant's threats against his former probation department officer.  Finding that the information being relayed as a *Tarasoff* report was reliable, the court overruled defense counsel's hearsay objection to Officer Lee's testimony regarding the report of threats made by defendant.  Officer Lee also testified concerning the statements made by defendant to the officer including defendant's repeated threats against his former probation department officer.  On cross-examination, Officer Lee testified at the time he spoke with defendant he could not tell if defendant was intoxicated.  Defendant spoke to the officer "fine," and the officer did not get too close to the defendant for safety reasons.

Defendant did not testify on his own behalf.  He submitted his medical record regarding his hospitalization on May 16, 2015, which document was admitted and

considered by the court. The medical record indicated that on May 16, 2015, defendant was admitted at 11:21 a.m. and discharged the same day at 10:34 p.m. On his arrival at the hospital, defendant "present[ed] with" alcohol intoxication having been "[f]ound down on the street, brought in by AMR." Defendant was found to be "alert and oriented to person, place, and time." He stated he had been drinking until four hours before he came to the hospital. He also stated his desire to kill his former "parole" officer, noting he had access to a gun at his friend's house and he wanted to shoot the officer in the face. The emergency room doctor ordered blood tests and a psychiatric consultation. The blood drawn approximately one hour after defendant's arrival at the hospital showed his "ethanol, serum or plasma," level was abnormal at .296.

After argument by counsel, the court sustained the petition to revoke defendant's PRCS for "several different reasons." The court first found that "one of the conditions of [defendant's] post release community supervision is that [defendant was] not to commit any [new] criminal offense and the evidence is overwhelmingly clear that [defendant] violated Penal Code Section 647(f), getting . . . so intoxicated on alcohol [that he was] found face down in the street and had to be taken by ambulance to an emergency room where sometime after that [his] blood alcohol level was a .296. That's clear evidence of a criminal violation and absolutely a violation of [the] terms of [the] post release community supervision, [so] that's the first ground for sustaining [the] petition." The court also explained its reasons for finding, based on the preponderance of the evidence, that defendant had violated the terms of his PRCS by making criminal threats (§ 422), and possessing a firearm pursuant to defendant's admission. Defendant waived time for receipt of a probation department report on the issue of sentencing. After further argument by counsel, the court reinstated defendant to PRCS subject to the condition that he serve the maximum term of 180 days in county jail, with credit for time served of 96 days. Defendant filed a timely notice of appeal from the July 2, 2015, judgment.

## DISCUSSION

Defendant's appellate counsel discovered no issues meriting argument, but suggests two arguable issues appear in the record: (1) whether defendant's placement on

5

PRCS following his release from prison in May 2015 after completion of his sentence for a 2010 crime constitutes ex post facto punishment, in violation of the federal and state constitutions, and (2) whether there was sufficient evidence to support the court's finding that defendant violated the terms of his PRCS. We have reviewed the entire record and the suggestions of appellate counsel and conclude there are no issues requiring further briefing.

Any ex post facto claim was forfeited by defendant's failure to raise the issue in the trial court. (*People v. White* (1997) 55 Cal.App.4th 914, 917.) In all events, there is no merit to the claim. Both the federal and state constitutions prohibit as ex post facto " ' "any statute which . . . makes more burdensome the punishment for a crime, after its commission . . . ." ' " (*Id.* at p. 916, quoting from *Collins v. Youngblood* (1990) 497 U.S. 37, 42, and citing *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 294.) The imposition of PRCS does not implicate the constitutional prohibition against retroactively increasing punishment for crimes. Before the enactment of the Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, §§ 1, 450, amended by Stats. 2011, ch. 361, § 6.7, and Stats. 2012, ch. 43, § 27) (the Realignment Act), "a prison sentence ended with a period of parole administered by the state. (Stats. 2010, ch. 219, § 19.) Now, a prison sentence for certain felons ends with county-administered community supervision in lieu of parole. (Stats. 2011, ch. 15, §§ 468, 479; [Pen. Code,] §§ 3000, subd. (a)(1), 3000.08, 3451; see *People v. Cruz* (2012) 207 Cal.App.4th 664, 671-672 [143 Cal.Rptr.3d 742] [ ].)" (*People v. Isaac* (2014) 224 Cal.App.4th 143, 145 (*Isaac*).) [5] The Realignment Act does not change either the terms of a defendant's sentence (*People v. Jones* (2014) 231 Cal.App.4th 1257, 1267, fn. 8), or the standards for determining a prisoner's eligibility

_____

[5] "Serious felons remain subject to parole, but felons whose crimes fall short of certain severity criteria[, like defendant], are 'subject to community supervision' for up to three years if 'released from prison on and after October 1, 2011.' (§ 3451, subd. (a).)" (*Isaac*, *supra*, 224 Cal.App.4th at p. 145; compare § 3000 subd. (b)(2)(a) ["[f]or a crime committed prior to July 1, 2013, at the expiration of . . . a term of imprisonment imposed pursuant to Section 1170 . . ., the inmate shall be released on parole for a period not exceeding three years"].)

for early release and setting a release date.  The Realignment Act " 'merely modifies the agency that will supervise the defendant after release [from prison].' " (*People v. Espinoza* (2014) 226 Cal.App.4th 635, 639, fn. 3 (*Espinoza*).)  In *Espinoza*, the court rejected an "argument that PRCS is an ex post facto law" for various reasons including the fact that had Espinoza not been subject to PRCS on his release from prison, he "would have had equivalent terms and conditions" imposed if released on parole.  (*Id*. at pp. 638, 641.)

Additionally, substantial evidence supports the court's finding that defendant violated the terms of his PRCS.  As an appellate court, " '[a]lthough we must ensure the evidence is reasonable, credible, and of solid value, nonetheless, it is the exclusive province of the . . . [trier of fact] . . . to determine . . . the truth and falsity of the facts on which that determination depends.' "  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206, quoting from *People v. Jones* (1990) 51 Cal.3d 294, 314.)

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Pollak, J.

7